# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| NANCY ROLLER, | : | |
| Plaintiff, | : | |
| | | Case No. 3:06CV404 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| JO ANNE B. BARNHART,[1] | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[2]

## I.    INTRODUCTION

Plaintiff Nancy Roller brings this case *pro se* challenging the Commissioner of the Social Security Administration's conclusion that she is not under a "disability" as defined by the Social Security Act.  As a result of that conclusion, the Commissioner denied Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income.  *See* Tr. 20-38.  The Commissioner's decision is subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of the Social Security Administration, *see* http://www.ssa.gov/pressoffice/pr/astrue-pr.htm, and he is therefore the proper-party defendant in this case.  For docketing continuity, the caption of this case will remain the same.

[2] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

This case is before the Court upon Plaintiff's Statement of Specific Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #11), the administrative record, and the record as a whole.  Construing Plaintiff's *pro se* Complaint and Statement of Errors liberally in her favor, she seeks an Order either reversing or vacating the Commissioner's final non-disability decision.  The Commissioner seeks an Order affirming the Commissioner's final decision.

## II. BACKGROUND

Plaintiff graduated from high school in 1986 and earned an Associates degree in nursing.  (Tr. 93, 350, 371).  Her past employment has mainly involved work as a Registered Nurse.  She most recently worked, from 1999 to 2001, as a cashier and finisher at a car wash.  (Tr. 88, 634).

Plaintiff suffers from mental health problems, specifically bipolar disorder.  (Tr. 37, 87).  Her impairments prevent her from performing her past nursing and car-finishing work.  (Tr. 37, 88).  She therefore turned to the Social Security Administration for financial assistance by applying for Supplemental Security Income (SSI) and for Disability Insurance Benefits (DIB).  Plaintiff asserted a disability onset date of April 1, 1996 in her SSI application; she asserted a disability onset date of July 1, 1999 in her DIB application.

After various administrative proceedings, Administrative Law Judge Melvin A. Padilla denied Plaintiff's applications based on his conclusion that Plaintiff's bipolar

disorder did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 20-38).

At the time of the ALJ's decision, Plaintiff's age (54) placed her in the category of a person "closely approaching advanced age" for purposes of resolving her SSI and DIB applications. *See* 20 C.F.R. §404.1563(d), *see also* Tr. 35.

Plaintiff testified during the ALJ's hearing that she suffers from bipolar disorder. (Tr. 636). She explained that she experienced "real rapid cycles" that include depression on one side cycling to a "high" on the other side. (Tr. 636). She denied having any other problems. (Tr. 643).

She takes Trazdone, an antidepressant medication. She takes Seroquel, an antipsychotic medicine, on an as needed basis, only at night. (Tr. 637). Plaintiff feels that medication and counseling help her because she "really had a bad time" for about three to four months when she did not have access to a counselor. (Tr. 640).

Plaintiff is able to do regular household chores (vacuuming, sweeping, laundry, etc.). (Tr. 644-45). She is a self-described "avid reader." (Tr. 645). She drives five times a week. (Tr. 633). And, she spends a lot of time with her grandsons. She explained, "They tend to help me keep from being depressed a lot." (Tr. 638). Plaintiff babysits her two grandsons three times a week, but her daughter has an alternate babysitter when Plaintiff is not up to watching them. (Tr. 638, 651). Her psychiatrist encouraged her to visit or babysit her grandchildren as a therapeutic activity. (Tr. 651).

Plaintiff also likes to fish and play cards with her boyfriend. (Tr. 638). She

describes fishing as "very relaxing."  (Tr. 645).

Turning to the remaining information in the administrative record, the most significant evidence for purposes of the present case consists of Plaintiff's medical records.

Plaintiff began receiving mental health treatment many years ago, beginning at least as early as 1991, after she was hospitalized for overdosing on an antidepressant medication.  (Tr. 145-152, 218-19).  More recently, in 2002, Plaintiff began receiving mental health care at Advanced Therapeutic Services, including treatment with Naveen Kumar, M.D.  (Tr. 379-89).  Dr. Kumar reported that Plaintiff had a past history "significant for depression and probable mood swings."  (Tr. 381).  He diagnosed Plaintiff with anxiety disorder, not otherwise specified and "Rule [sic] Bipolar Disorder."[3] (Tr. 381).

Charles Walters, M.D., a psychiatrist, treated Plaintiff from July 2002 to December 2002.  He completed a questionnaire for the Ohio Bureau of Disability Determination in December 2002.  (Tr. 239-41).  Dr. Walters opined that Plaintiff would be able to follow written directions but would have some difficulty with verbal instructions, had poor ability to concentrate, and would have difficulty maintaining her ability to perform routine tasks.  (Tr. 240).  He diagnosed Plaintiff as having both bipolar disorder and anxiety disorder.  *Id*.

---

[3]  Dr. Kumar probably meant to write, "rule out" bipolar disorder.

More recently, in May 2003, a psychiatrist, Dr. Siddiqi, began treating Plaintiff for bipolar disorder.  (Tr. 343, 352-60).  In January 2004 Dr. Siddiqi answered interrogatories, opining that Plaintiff could not perform mental work-related activities, including for example, her inability to: (1) be prompt and regular in attendance; (2) respond appropriately to supervisors, coworkers, and customary work pressures; (3) understand, remember, and carry out simple instructions without requiring very close supervision; (4) sustain concentration and attention to meet normal work standards; to behave in an emotionally stable manner; (5) relate predictably in social situations; and (6) complete a normal work day and work week without interruption from psychologically based symptoms .  (Tr. 352-60).

From April 2003 to June 2004, Plaintiff received mental health counseling from Ms. Wiley, a licensed social worker who holds a Master's degree in psychological counseling.   (Tr. 361).  Ms. Wiley, like Dr. Siddiqi, indicated in her interrogatory answers that Plaintiff could not perform most mental work-related activities. (Tr. 361-69).

The record also contains the opinions of several non-treating medical professionals.  In January 2002 psychologist Dr. Pawlarczyk reviewed the record and completed a psychiatric review technique form.  In doing so, he concluded that Plaintiff had no significant limitations in her ability to perform mental work activities.  (Tr. 249-251).  In March 2003, another psychologist, Dr. Lewin, indicated her agreement with Dr. Pawlarczyk's opinions by stamping the form he had previously completed.  (Tr. 252).  Dr.

5

Lewin provided no explanation in support of her opinion but merely affirmed it "as written." *Id.*

In November 2004, psychologist Dr. McIntosh examined Plaintiff for the Ohio BDD. Dr. McIntosh diagnosed bipolar disorder. He opined, in part, that Plaintiff was moderately impaired in her ability to understand, remember and carry out one-to-two step instructions. Her ability to interact with supervisors and coworkers was also moderately impaired. Her ability to maintain concentration and attention for simple repetitive tasks was mildly-to-moderately impaired. And, Dr. McIntosh believed that Plaintiff had a "marked" limitation in her ability to respond appropriately to work pressures in a usual work setting. (Tr. 371-78).

A record-reviewing psychologist, Dr. Buban, testified during the ALJ's hearing that Plaintiff retained more functional work abilities than her treating medical sources indicated. (Tr. 670-71). Dr. Buban explained that her assessment was more in line with Dr. McIntosh's belief that Plaintiff only has "slight difficulties in a number of areas...." (Tr. 671). Dr. Buban, however, did not accept Dr. McIntosh's opinion that Plaintiff had marked limitation in her ability to handle daily work stress because Plaintiff retained the ability to handle the stress associated with raising children, including her son, as well as her two grandchildren (ages 1 and 3½) when she visits them 2 or 3 times per week. (Tr. 670). Dr. Buban further testified that treatment notes indicated that Plaintiff benefitted from her treatment. (Tr. 663). Dr. Buban opined that Plaintiff could perform routine tasks that involve little change in routine, entailed no more than a moderate level of

contact with the public, no production quotas, and no fast-paced work.  (Tr. 671-72).

### III. ADMINISTRATIVE REVIEW

The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant (1) from performing his or her past job and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70.  A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  *See* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).[4]  Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

---

[4] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI Regulations.

7

     3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

     4.     Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

     5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At Steps 2 and 3 in the present case, the ALJ concluded that Plaintiff has the severe impairment of bipolar disorder, but the severity of this impairment does not meet or equal the level of severity described in Appendix 1, Subpart P, Regulations No. 4. (Tr. 37-38). At Step 4, the ALJ found that Plaintiff had the Residual Functional Capacity to perform the basic exertional requirements of medium work.[5] The ALJ described his specific findings as follows:

> In view of the medical evidence of record, it is found that she is capable of performing the basic exertional requirements of medium work if she is permitted to alternate positions whenever necessary to release stress and if she is limited to performing low stress, unskilled, simple, repetitive tasks which do not involve fast-paced work, production quotas, or extended periods of concentration. She also cannot be expected to have more than minimal contact with co-workers or supervisors or any contact whatsoever with members of the general public.

---

[5] The Regulations define medium work as lifting "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567(c).

8

(Tr. 32). This assessment, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and hence not eligible for DIB or SSI. (Tr. 36-38).

### IV.  JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: whether substantial evidence in the administrative record supports the ALJ's factual findings and whether the ALJ "applied the correct legal criteria." *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance...'" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(citation omitted).

Judicial review of the administrative record and the ALJ's decision is not *de novo*. *See Cutlip v. Secretary of Health and Human Servs.*, 25 F3d 284, 286 (6th Cir. 1994). And the required analysis is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

9

The second line of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F3d at 746. This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir.2004)).

## V. DISCUSSION

The ALJ rejected Dr. Siddiqi's opinion because it was not based on "a complete, longitudinal assessment of the claimant's treatment history." (Tr. 33). Plaintiff challenges this factual accuracy of this reason based on a conversation she had with Dr. Siddiqi, during which Dr. Siddiqi explained that she completed the paperwork in the event when patients are gone and their charts were available. (Doc. #10 at 1). Assuming the truth of this statement by Dr. Siddiqi does not assist Plaintiff because the administrative record contains a treatment note written by Dr. Siddiqi revealing that she partially completed the paperwork because Plaintiff's "chart was not available." (Tr. 453). This note constitutes substantial evidence in support of the ALJ's reason for rejecting Dr. Siddiqi's opinion, even if other evidence of record supports a different factual conclusion. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

Plaintiff next challenges Dr. Buban's opinion that because Plaintiff was able to care for her grandchildren (alternating with a babysitter), her mental work abilities are not

as restricted as Ms. Wiley or Dr. Siddiqi believed. Plaintiff argues that Dr. Buban was incorrect because although Plaintiff can babysit her daughter's children, her daughter always checks on her mental status the night before she babysits and calls the babysitter when warranted. (Doc. #10 at 2). Assuming the truth of Plaintiff's description does not assist her in showing error in the ALJ's decision. This is so because Plaintiff does not challenge Dr. Buban's statement that Plaintiff was able to care for her grandchildren 2-3 times per week for the past year and one-half. *See* Tr. 670. Even if Plaintiff needs, at times, a break from her child-care activities, her testimony before the ALJ tends to confirm Dr. Buban's opinion. Plaintiff testified that she spends a lot of time with her grandchildren and that she babysits them about three times a week. (Tr. 638). Although she also explained that she alternates with the babysitter on days when she's not up to it, she did not indicate how often this occurs. *See id.* Without such information, her prior testimony that she sees her grandchildren a lot, as much as 2 to 3 times per week, is consistent with Dr. Buban's opinion. *Cf.* Tr. 638 *with* Tr. 670.

In addition, a review of the ALJ's decision reveals that he considered the record as a whole and he reasonably concluded that Plaintiff could perform a range of medium work. (Tr. 35). In doing so, the ALJ properly considered the medical source opinions, the objective medical evidence, and other pertinent evidence. See 20 C.F.R. §404.1545. The ALJ's reliance on Dr. Buban's opinion was warranted because she was the only medical source who reviewed the entire record and who also considered Plaintiff's testimony during the ALJ's hearing. (Tr. 660-61). The ALJ, therefore, properly gave Dr.

Buban's opinion significant weight. *See* 20 C.F.R. §404.1527(d)(3) ("We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.").

The ALJ also gave some weight to Dr. McIntosh's opinion. (Tr. 32). In particular, the ALJ indicated that he relied on Dr. McIntosh's opinion that Plaintiff had mild-to-moderate restriction on her ability to maintain concentration as well as her ability to interact with supervisors and coworkers was moderately impaired. (Tr. 32, 374-75). This opinion provides further support for the ALJ's finding that Plaintiff could perform a range of medium work.

In addition to the medical source opinions, the ALJ cited Plaintiff's level of activity – as did Dr. Buban – in finding her descriptions of her mental impairments to be less than fully credible. *See* Tr. 33-34; *see also* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities considered in evaluating symptoms). Indeed, the ALJ noted that Plaintiff was able to take care of her personal needs; performed a variety of household chores including cooking, washing dishes, sweeping, mopping, vacuuming, doing laundry, shopping, and making beds; babysat two young grandchildren; drove; and read extensively. (Tr. 33, 111-13, 372-74, 633, 638, 644-45, 648, 661). The record also showed that Plaintiff fished and played cards with her boyfriend and planned her stepdaughter's wedding (Tr. 638, 653).

The ALJ further relied on the work Plaintiff performed after her alleged onset date, finding this as a reason to question the credibility of her testimony. (Tr. 29, 71, 96-103).

The ALJ also noted that Plaintiff's treatment involved only conservative measures and that Plaintiff did not experience side effects from her medications that would prevent her from working, which were proper considerations under the Regulations. *See* Tr. 34-35; *see also* 20 C.F.R. §§404.1529(c)(3)(iv)-(v). Based on the record as a whole, the ALJ reasonably concluded that Plaintiff could perform a range of medium work.

Accordingly, although Plaintiff's Statement of Errors suggests that the evidence should have been weighed differently, her assertions do not undermine the substantial evidence supporting the ALJ's assessment of the medical source opinions and his other findings. Consequently, the ALJ's decision must be affirmed. *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 477 (6th Cir. 2003); *see also Mullen v. Bowen*, 800 F.3d 535, 545 (6th Cir. 1986).

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final decision that Plaintiff was not under a disability and therefore not entitled to benefits under the Act be affirmed; and

2. The case be terminated on the docket of this Court.


April 25, 2008　　　　　　　　　　　　　　　　　　 s/ Sharon L. Ovington
　　　　　　　　　　　　　　　　　　　　　　　　　Sharon L. Ovington
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

      Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Am,* 474 U.S. 140 (1985).